## The Proprietors of the Upper Locks vs. Abbott.

S. having agreed to transport lumber down the Connecticut River, caused it to enter the head of a canal, on which were the plaintiffs' locks. At this place it was the custom to exact the tolls. The plaintiffs' agent refused to permit the lumber to pass through the locks on the credit of S.; and the defendant thereupon promised that if the agent would permit it to pass through the locks, he would be responsible for the tolls, and would see them paid, and the lumber was permitted to pass.—*Held*, that the defendant's promise was an original, and not a collateral undertaking, and was not within the statute of frauds.

The mere fact that a promise is for the benefit of a third person, does not render it necessary that it should be in writing.

Assumpsit, upon an account annexed to the writ for tolls for the passage of lumber through the locks and canals of the plaintiffs, at Montague, on the Connecticut River.

The following facts appeared in evidence. In the year 1840, one Sanborn was employed by Abbott and others to freight lumber to the Hartford market, by the thousand, and he was to pay the tolls thereon. On arriving at the plaintiffs' locks, and after entering the head of the canal with the lumber, Sanborn applied to the plaintiffs' agent for permission to pass the lumber through the locks, upon his own credit, but the agent refused him. He then requested the agent to see Abbott on the subject, stating that he had no money to pay the tolls. The agent called on Abbott while the lumber was in the canal, and informed him of the facts, and Abbott told him that if he would permit Sanborn to pass the lumber through the locks, he would be responsible for the tolls and would see them paid, if the agent thought his credit better than Sanborn's. After making some inquiries in relation to the responsibility of Abbott, the agent gave Sanborn permission to pass through the locks with the lumber, which he did accordingly. It is usual to let the lumber in at the head of the canal before the tolls are exacted, and then to collect them, and to stop the lumber before it passes the locks at the foot, if the tolls are not paid.

Abbott objected that the evidence was incompetent to support the action, but the objection was overruled.

A verdict was returned for the plaintiffs, and the defendant moved for a new trial.

*Ainsworth,* for the defendant. The contract was partly completed on the credit of Sanborn ; and in such a case, a third person who comes in must bind himself by writing, or the contract will be void by the statute of frauds. 1 *Starkie's Ev.* 270 ; 6 *Pick.* 509. The whole credit was given to Sanborn. He and Abbott were not partners, nor were they jointly interested. If there were any liability on Sanborn, the new promise must be in writing. 2 *T. R.* 80 ; 1 *H. Bl.* 120 ; 1 *Ld. Raym.* 224 ; 2 *Starkie's Ev.* 345 ; *Chitty on Con.* 202 ; 8 *Johns.* 23. If the whole credit were not given to Abbott, his promise was collateral, and should have been in writing. 2 *Ld. Raym.* 1085 ; *Buller's N. P.* 280 ; 1 *Starkie's Ev.* 270.

*Perley,* for the plaintiffs. Before any question was made about payment, the lumber was taken into the canal. The case, therefore, does not sustain the defendant's position, that the credit was first given to Sanborn, and that then the defendant came in as a promiser. Where a person has a lien, and then another, in consideration of the abandonment of the lien, promises to pay the debt, the promise is not within the statute. Here the plaintiffs had the control of the lumber, and had a lien. 2 *Wils.* 308 ; 4 *Bing.* 264 ; 2 *East* 325. The defendant substituted himself in the place of Sanborn, and he could not be injured by any claim made on Sanborn. The case does not show any joint contract with Sanborn. The agent refused to give any credit to Sanborn, or to make any contract with him, and the only contract he made was with the defendant.

*Bellows,* in reply. Sanborn was originally bound to pay. He was like a traveller upon a turnpike road, who is bound

to pay his toll when he reaches the gate. The question in such cases is, whether the new promiser comes in as exclusively liable, or merely in aid of him who is already liable ? In the latter case, the promise must be in writing. 2 *Hen. & Mumf.* 603; *Ch. on Con.* 201; 2 *Saund. Pl. & Ev.* 547; 1 *Saund. Rep.* 211, (*n*) 2; 1 *B. & P.* 158; 3 *C. & P.* 130.

The cases show that such acts as those of the agent give a character to the contract. 1 *Nev. & P.* 588; 15 *Pick.* 159; *Am. Jurist, No.* 29, *page* 202; 12 *Vermont* 125. It is immaterial that the promise is made before the goods are delivered, or the services are rendered. 1 *Saund.* 211, (*n*) 2.

GILCHRIST, J. If the defendant's promise had been a collateral undertaking, in the circumstances of this case, it must have have been in writing. The principle established by the cases is, that if any credit is given to the party who receives the benefit, the undertaking of the other is collateral, and voidable unless in writing. *Holmes* vs. *Knight,* 10 *N. H. Rep.* 177, *and cases there cited.* Whether this principle has not been sometimes so applied as to transform the collateral liability into a principal liability, as it is intimated in that case may have been done, need not be now inquired into, because it is the opinion of the court that the promise by the defendant was clearly an original undertaking.

Sanborn had caused the lumber to enter the head of the canal. At this place the tolls are usually exacted for the passage through the locks. At this point, then, Sanborn had incurred no liability. He had his choice, either to pay the tolls, that the lumber might pass through the locks, or to withdraw the lumber from the canal. The lumber was not to be stopped at this place if the tolls were not paid, but in that event its stoppage would take place at the locks at the foot of the canal. In this emergency, application was made to Abbott, and he thereupon promised the agent that if he

would permit *Sanborn* to pass the lumber through the locks, he, Abbott, would be responsible for the tolls. This was not a promise to be answerable for Sanborn's debt, nor a promise to pay the tolls if Sanborn did not pay them, but a new and distinct contract, to which there were no parties but the agent and Abbott. The case is likened by the defendant to that of a traveller on a turnpike road, who is bound to pay his toll when he reaches the gate. But he is not bound to pay any toll if he does not pass through the gate. He may choose to turn back, and in that event he would be under no liability to pay toll for travelling over the road. Such was the position of Sanborn. He incurred no liability by causing the lumber to enter the head of the canal. It was its passage through the locks, and that alone, from which the liability arose. So far was the agent from making any contract with Sanborn, or from giving any credit to him, that he refused to do so.

In this case, the promise by Abbott may be considered as made for the benefit of Sanborn. But this fact alone does not render it necessary that the promise should be in writing. In *Darnell* vs. *Tratt*, 2 *C. & P.* 82, a mother took her son to school, and saw the master, but it did not appear what passed between them. Afterwards, a bill was delivered to the boy's uncle, who said it was quite right, for he was answerable. It was held that the statute of frauds did not apply, and that there was competent evidence of an original undertaking by the defendant, the uncle. So a promise by a surety to indemnify the plaintiff if he also would become surety for the principal, is not within the statute. *Chapin* vs. *Merrill*, 4 *Wendell* 657. In *Chapin* vs. *Lapham*, 20 *Pick.* 467, the defendant promised to indemnify the plaintiff if he would assist the defendant's son in his business. The plaintiff accordingly signed a note as surety, with the son as principal, which he afterwards paid, and it was held that the promise was not within the statute.

The opinion of the court is, that there should be

*Judgment on the verdict.*